**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

POPLAR BLUFF REGIONAL MEDICAL CENTER, LLC
d/b/a POPLAR BLUFF REGIONAL MEDICAL CENTER
3100 Oak Grove Rd
Poplar Bluff, MO 63901-1573

QHG OF ENTERPRISE, INC. d/b/a
MEDICAL CENTER ENTERPRISE
400 N. Edwards St
Enterprise, AL 36330-2510

LUTHERAN MUSCULOSKELETAL CENTER, LLC
d/b/a THE ORTHOPAEDIC HOSPITAL
7952 W. Jefferson Blvd
Fort Wayne, IN 46804-4140

PINEY WOODS HEALTHCARE SYSTEM, LP
d/b/a WOODLAND HEIGHTS MEDICAL CENTER
505 S. John Redditt Dr
Lufkin, TX 75904-3120

LA PORTE HOSPITAL COMPANY, LLC d/b/a
LA PORTE HOSPITAL
1331 State Street
La Porte, IN 46350-3112

KNOX HOSPITAL COMPANY LLC d/b/a
STARKE HOSPITAL
102 E. Culver Rd
Knox, IN 46534-2216

IOM HEALTH SYSTEM, LP d/b/a
LUTHERAN HOSPITAL OF INDIANA
7950 W. Jefferson Boulevard
Fort Wayne, IN 46804-4140

PUNTA GORDA HMA LLC d/b/a
BAYFRONT HEALTH PUNTA GORDA
809 E. Marion Ave
Punta Gorda, FL 33950-3819

Civil Action No.: 26-1576

4900-9901-6345, v. 13

KEY WEST HMA LLC d/b/a
LOWER KEYS MEDICAL CENTER
5900 College Road
Key West, FL 33040-4342

SHANDS AT LAKE SHORE, INC. d/b/a
SHANDS LAKE SHORE
368 NE Franklin St
Lake City, FL 32055

CAMPBELL COUNTY HMA LLC d/b/a TENNOVA
HEALTHCARE-LAFOLLETTE MEDICAL CENTER
923 E Central Ave
LaFollette, TN 37766

TRIAD OF ALABAMA, LLC d/b/a
FLOWERS HOSPITAL
P. O. Box 6907
Dothan, AL 36302-6907

                    Plaintiffs,

v.

ROBERT F. KENNEDY JR.,
in his official capacity as Secretary,
United States Department of Health and Human Services,
200 Independence Ave, S.W.
Washington, D.C. 20201

                    Defendant.

## **COMPLAINT**

1.      This case involves calculation of the Medicare wage indexes and related Medicare reimbursement, by the Secretary ("Secretary") of Health and Human Services ("HHS"), as applied to the Plaintiffs ("Plaintiffs") for their respective Medicare cost reports ending during calendar year ("CY") 2020.  The Secretary calculated Plaintiffs' CY 2020 wage indexes in contravention of the Medicare statute, resulting in lower Medicare reimbursement than each Plaintiff is entitled to receive.

## I.    PARTIES

2.    The Plaintiffs are acute care hospitals with their respective principal places of businesses located at the addresses set forth in the caption.  Plaintiffs participate in the Medicare program as providers of services.

a.  Poplar Bluff Regional Medical Center, LLC d/b/a Poplar Bluff Regional Medical Center, Medicare provider number 26-0119, disputes the wage index applied to its Medicare payments for its fiscal year ending December 31, 2020;

b.  QHG of Enterprise, Inc. d/b/a Medical Center Enterprise, Medicare provider number 01-0049, disputes the wage index applied to its Medicare payments for its fiscal year ending December 31, 2020;

c.  Lutheran Musculoskeletal Center, LLC d/b/a The Orthopaedic Hospital, Medicare provider number 15-0168, disputes the wage index applied to its Medicare payments for its fiscal year ending December 31, 2020;

d.  Piney Woods Healthcare System, LP d/b/a Woodland Heights Medical Center, Medicare provider number 45-0484, disputes the wage index applied to its Medicare payments for its fiscal year ending December 31, 2020;

e.  La Porte Hospital Company LLC d/b/a La Porte Hospital, Medicare provider number 15-0006, disputes the wage index applied to its Medicare payments for its fiscal year ending December 31, 2020;

f.  Knox Hospital Company LLC d/b/a Starke Hospital, Medicare provider number 15-0102, disputes the wage index applied to its Medicare payments for its fiscal year ending December 31, 2020;

g.  IOM Health System, LP d/b/a Lutheran Hospital of Indiana, Medicare provider number 15-0017, disputes the wage index applied to its Medicare payments for its fiscal year ending June 30, 2020;

h.  Punta Gorda HMA LLC d/b/a Bayfront Health Punta Gorda, Medicare provider number 10-0047, disputes the wage index applied to its Medicare payments for its fiscal year ending September 30, 2020;

i.  Key West HMA LLC d/b/a Lower Keys Medical Center, Medicare provider number 10-0150, disputes the wage index applied to its Medicare payments for its fiscal year ending September 30, 2020;

j.  Shands at Lake Shore, Inc. d/b/a Shands Lake Shore, Medicare provider number 10-0102, disputes the wage index applied to its Medicare payments for its fiscal year

ending August 31, 2020;

k.  Campbell County HMA LLC d/b/a Tennova Healthcare-Lafollette Medical Center, Medicare provider number 44-0033, disputes the wage index applied to its Medicare payments for its fiscal year ending September 30, 2020;

l.  Triad of Alabama, LLC d/b/a Flowers Hospital, Medicare provider number 01-0055, disputes the wage index applied to its Medicare payments for its fiscal year ending September 30, 2020.

3.  Defendant Robert F. Kennedy, Jr., Secretary of HHS, is the federal official responsible for administering the Medicare Program. The Centers for Medicare and Medicaid Services ("CMS") primarily carries out these duties on behalf of the Secretary. References to the Secretary are meant to refer to him, his subordinates, his official predecessors or successors, and the Department and its components that he oversees, as the context requires. Defendant is sued in his official capacity.

## II.   JURISDICTION AND VENUE

4.  This action arises under the Medicare statute (Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*) and the Administrative Procedure Act ("APA") (5 U.S.C. §§ 551-559 and 701-706).

5.  This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), which grants Medicare providers the right to obtain expedited judicial review ("EJR") of any action involving "a question of law or regulations relevant to the matters in controversy" when the Secretary's Provider Reimbursement Review Board (the "Board") "determines . . . that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received." If the Board fails "to render such determination in writing within thirty days after the Board receives the request," the providers "may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy

contained in such request for a hearing."  *Id*.

6.      Venue is proper in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1).

### III.    STATUTORY AND REGULATORY BACKGROUND

#### A.    The Medicare Program and the Medicare Wage Index

7.      Medicare is a federal health insurance program for people over the age of 65, the disabled, and individuals with end stage renal disease.  42 U.S.C. § 1395ww *et seq*.

8.      The Secretary has delegated much of the responsibility for administering the Medicare program to CMS, which is a component of HHS.  CMS contracts with private entities known as Medicare Administrative Contractors ("MACs") to carry out some of the administrative responsibilities for the Medicare program.

9.      In 1983, Congress created an inpatient Medicare prospective payment system ("IPPS") to reimburse acute-care hospitals based on the average cost of treating a patient with a given diagnosis.  *See* 42 U.S.C. § 1395ww(d)(1)-(5).  Under IPPS, the Secretary determines an annual standard national rate based on the average costs of hospital services.  *See* 42 U.S.C. § 1395ww(d).  That rate consists of a "labor-related" portion and a "non-labor-related" portion. The labor-related portion consists of the proportion "of hospitals' costs which are attributable to wages and wage-related costs."  42 U.S.C. § 1395ww(d)(3)(E).

10.      Because labor costs vary based on a hospital's location and labor market, the Medicare statute requires the Secretary to adjust Medicare payments for inpatient services to account for those wage differences.  *See* 42 U.S.C. § 1395ww(d)(3)(E).  This adjustment, known as the wage index, is an annual comparison of the average hospital wages in a particular geographic area to the national average hospital wage.  When calculating a hospital's Medicare payments, the wage index is multiplied by the labor-related portion of the national standard rate.

A higher wage index results in higher Medicare reimbursement.

11.      For purposes of the hospital wage index there are two types of geographic areas: urban and rural.  The Medicare statute defines urban and rural areas as follows:

> The term "urban area" means an area within a Metropolitan Statistical Area (as defined by the Office of Management and Budget) or within such similar area as the Secretary has recognized under subsection (a) by regulation … and the term "rural area" means any area outside such an area or similar area…

42 U.S.C. § 1395ww(d)(2)(D).  Stated differently, any geographic area that is not an urban area in a state is the rural area in that state.  Each state has one rural area, except for a handful of states that are entirely urban.  If a hospital is not located in an urban area, the hospital is considered to be located in a rural area.

12.      The Secretary determines a separate wage index for each urban area for each federal fiscal year ("FFY"), which runs from October 1 to September 30.  The FFY urban wage index is based on the wage data of hospitals located in that urban area.  The Secretary also determines a single wage index for the rural area of each state for each FFY based on the wage data of hospitals located in that rural area.  The wage index for a FFY is applied to the portions of a hospital's Medicare cost year that overlap with the FFY.  84 Fed. Reg. 61,142, 61,188 (Nov. 12, 2019).  For example, if a hospital's fiscal year ends on June 30, 2020, the FFY 2019 wage index will be applied for the period from July 1, 2019, through September 30, 2019, and the FFY 2020 wage index will be applied for the period from October 1, 2019, through June 30, 2020.

13.      The Secretary announces updates to IPPS payments annually in a rulemaking, referred to in this Complaint as the "Final Rule" for the FFY at issue.

14.      The Secretary is also required to adjust Medicare payments for hospital outpatient services to account for variances in labor costs.  42 U.S.C. § 1395l(t)(2)(D); 42 C.F.R. § 419.43(a).  The Secretary typically applies the wage indexes determined for IPPS to outpatient

payments.  For example, for Medicare outpatient payments beginning on January 1, 2020, the Secretary applied the wage indexes determined for purposes of FFY 2020 IPPS payments.

> **B.  Reclassification as a "Lugar" County or by the Medicare Geographic Classification Review Board**

15.    Section 4005 of the Omnibus Budget Reconciliation Act of 1987 (Pub. L. 100-203), allows a hospital located in a rural area to be treated as being located in a nearby urban area if certain criteria are met.  42 U.S.C. § 1395ww(d)(8)(B).  These criteria are generally related to the commuting patterns from the rural area to the urban area.  *Id*.  Because former Senator Richard Lugar (R-IN) was the sponsor of this provision, the rural hospitals that benefit from this provision are commonly referred to as having "Lugar" status.  *See, e.g.*, 88 Fed. Reg. 58,640, 58,973 (Aug. 28, 2023).

16.    Some hospitals may be located in an area that receives a wage index that significantly understates the hospital's labor costs.  To assist hospitals in this situation, Congress established the Medicare Geographic Classification Review Board ("MGCRB") in 1989, an administrative body within HHS that renders decisions on applications by hospitals to reclassify from the area in which they are located to another area for wage index purposes.  42 U.S.C. § 1395ww(d)(10).  A hospital generally must meet three criteria to reclassify to a different wage area: (1) its wages must be higher than other hospitals in the area in which the hospital is located; (2) its wages must be comparable to hospitals in the area to which the hospital seeks to reclassify; and (3) it must be geographically proximate to that area.  42 C.F.R. § 412.230.  A hospital that is approved by the MGCRB for reclassification is treated as being located in the other area for purposes of receiving that area's wage index, absent a "rural floor" or other similar provision (explained below).

17.    The criteria for receiving a MGCRB reclassification are more lenient for hospitals

that are located in a rural area than those that are located in an urban area. For example, the criteria require that a rural hospital applicant have an average hourly wage that is at least 106% of the average hourly wage of the other hospitals located in the rural area and an urban hospital applicant to have an average hourly wage that is at least 108% of the average hourly wage of the other hospitals located in the urban area. 42 C.F.R. § 412.230(d)(1)(iii)(C).

### C.    The Medicare Hold Harmless Provisions

18.    As stated above, an area wage index is based on the wage data of hospitals located in a rural or urban area, but if a rural hospital receives Lugar status or is reclassified by the MGCRB, that hospital is no longer treated as being located in the rural area. Because these hospitals may have higher-than-average wage costs for the areas in which they are located, treating these hospitals as no longer being located in the rural area could have an adverse impact on the rural area wage index. The Medicare statute includes provisions that attempt to buffer the adverse impact on the wage index for hospitals that continue to be located in a rural area as the result of Lugar reclassification hospitals or as the result of an MGCRB decision. For purposes of this case, the statute provides that if a hospital geographically located in a rural area receives Lugar status or is reclassified by the MGCRB, that hospital's wages must still be included in calculating the rural wage index of the state in which the hospital is located, if not doing so would lower that rural wage index:

> If the application of subparagraph (B) [Lugar] or a decision of the Medicare Geographic Classification Review Board or the Secretary under paragraph (10), by treating hospitals located in a rural county or counties as not being located in the rural area in a State, reduces the wage index for that rural area (as applied under this subsection), the Secretary shall calculate and apply such wage index under this subsection as if the hospitals so treated had not been excluded from calculation of the wage index for that rural area.

42 U.S.C. § 1395ww(d)(8)(C)(ii).

19.    The purpose of this "hold harmless" provision is to protect hospitals that are

located in a rural area from receiving a reduced wage index if other rural hospitals with wages that are higher than average for the area receive MGCRB reclassifications out of the rural area. Absent this hold harmless provision, the rural wage index would be reduced by the exclusion of the wage data for those reclassified hospitals.

20.     The Secretary's long-standing interpretation of this hold harmless requirement has been articulated in numerous agency rulemaking:

> As described above, section 1886(d)(8)(C) of the Act (as amended by section 4004(h)(1)(A) of Public Law 101-508) sets forth an explicit methodology for determining the effect of reclassifications on the wage index values of various groups of hospitals. This provision provides certain "hold harmless" protections that apply to hospitals that are not reclassified. Rural hospitals that are not reclassified are protected under section 1886(d)(8)(C)(ii) of the Act, since the wage index value for any rural area cannot be reduced as a result of the reclassification of hospitals from that area.

56 Fed. Reg. 43,196, 43,221 (Aug. 30, 1991); *see, also,* 54 Fed. Reg. 19,636, 19,647 (May 8, 1989) ("Rural areas whose wage index values are reduced by the exclusion of wage data from hospitals that have been deemed to be located in adjacent MSAs would have their wage index recalculated as if those hospitals were not deemed to be urban."); 55 Fed. Reg. 15,150, 15,151 (Apr. 20, 1990) ("Rural areas whose wage index values would be reduced by excluding the data for redesignated hospitals will continue to have their wage index calculated as if no redesignation had occurred."); *accord* 54 Fed. Reg. 36,452, 36,477 (Sept. 1, 1989); 56 Fed. Reg. 25,178, 25,191-92 (June 3, 1991); 56 Fed. Reg. 25,458, 25,481 (June 4, 1991).

**D.     The Rural Floor**

21.     In two provisions, the Medicare statute protects urban hospitals from receiving a wage index that is lower than the rural wage index in the state in which the hospital is located, and this protection is commonly known as the rural floor.  One provision provides that certain types of wage index reclassifications "may not result in the reduction of any county's wage index

4900-9901-6345, v. 13

to a level below the wage index for rural areas in the State in which the county is located." 42 U.S.C. § 1395ww(d)(8)(C)(iii).

22.    Congress adopted the second provision in 1997, after recognizing that "[a]n anomaly that exists with the way area wage indexes are applied has resulted in some urban hospitals being paid less than the average rural hospital in their states."  H.R. Rep. No. 105-149, at 722 (1997).  This rural floor provision states:

> For purposes of section 1886(d)(3)(E) of the Social Security Act (42 U.S.C. 1395ww(d)(3)(E)) for discharges occurring on or after October 1, 1997, the area wage index applicable under such section to any hospital which is not located in a rural area (as defined in section 1886(d)(2)(D) of such Act (42 U.S.C. 1395ww(d)(2)(D)) may not be less than the area wage index applicable under such section to hospitals located in rural areas in the State in which the hospital is located.

Balanced Budget Act of 1997, Pub. L. No. 105-33, § 4410, 111 Stat. 251, 402 (1997) (reprinted at 42 U.S.C. § 1395ww note).

23.    In brief, the rural floor sets a wage index floor for urban hospitals, whereby a hospital that is located in an urban area may not be assigned a wage index that is lower than the rural wage index for the state in which the hospital is located.

### E.    Section 401 Hospitals and the Medicare Wage Index

24.    In 1999, Congress enacted a provision that allows urban hospitals to be treated as though they are located in the rural area of the state if the hospital meets one of four criteria. Medicare, Medicaid and SCHIP Balanced Budget Refinement Act of 1999, Pub. L. No. 106-113, § 401, 113 Stat. 1501A-369 (1999) (codified in part at 42 U.S.C. § 1395ww(d)(8)(E)(i)).  These criteria are different than the criteria to qualify for reclassification by the MGCRB.  Because this provision is Section 401 of the legislation, the hospitals that apply for urban-to-rural status under this provision are commonly referred to as Section 401 hospitals.  CMS often refers to these

hospitals as § 412.103 hospitals in the preamble to its rulemakings because 42 C.F.R. § 412.103 is the regulation that implements the statute. *See, e.g.*, 88 Fed. Reg. at 58,971-77. For ease of reference, this Complaint refers to these hospitals as Section 401 hospitals.

25.    The statute describes the impact of Section 410 hospital status as follows:

> For purposes of *this subsection*, not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a subsection (d) hospital described in clause (ii), the Secretary *shall* treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located.

42 U.S.C. § 1395ww(d)(8)(E)(i) (emphasis added). References to "this subsection" and "subsection (d)" refer to 42 U.S.C. § 1395ww(d) ("Subsection (d)") of the Medicare Act, which governs IPPS payments, including the wage index. Section 401 also specifically references "paragraph (2)(D)," which as noted above states the definition of "rural area" under Subsection (d). 42 U.S.C. § 1395ww(d)(2)(D).

26.    The Secretary has acknowledged that a Section 401 hospital "is treated as rural for all purposes of payment under the Medicare inpatient hospital prospective payment system (section 1886(d) of the Act), including … the wage index … as of the effective date of the reclassification." 65 Fed. Reg. 47,026, 47,030 (Aug. 1, 2000).

27.    Because a Section 401 hospital is treated "as rural," it receives the rural wage index, absent an MGCRB reclassification to another wage index area.

**F.    The Secretary Did Not Treat Section 401 Hospitals As Rural Hospitals**

28.    The requirement under 42 U.S.C. § 1395ww(d)(8)(E)(i) to treat Section 401 hospitals "as rural" has an impact on other provisions in the Medicare statute that address the treatment of rural hospitals in determining the rural wage index and the rural floor. The Secretary failed to comply with the Medicare statute's requirement at 42 U.S.C. §

1395ww(d)(8)(E) to treat Section 401 hospitals "as rural," which resulted in:

1)      the exclusion of wage data for Section 401 hospitals in calculating the rural

floor, contrary to 42 U.S.C. § 1395ww note; and

2)      the exclusion of wage data for Section 401 hospitals in calculating the rural

wage index (which impacts the rural floor) when doing so resulted in a lower

rural wage index, contrary to 42 U.S.C. § 1395ww(d)(8)(C)(ii).

**1.      The Secretary Did Not Treat Section 401 Hospitals "As Rural" For Purposes of the Rural Floor Calculation**

29.     Prior to FFY 2020, the Secretary applied a rural floor that was equal to the rural wage index in the state by including the wage data of all rural hospitals in both calculations, including Section 401 hospitals that are not otherwise reclassified out of the area.

30.     The Secretary changed this policy in the FFY 2020 IPPS Final Rule.  The Secretary stated that the rural wage index would be calculated as it always had been—using wage data of all hospitals located in the rural area of the state, whether they were geographically located in the state or were Section 401 hospitals.  The Secretary stated that the rural floor, however, would be calculated based on the wage data of hospitals geographically located in the rural area only and would exclude the wage data of Section 401 hospitals.  *See* 84 Fed. Reg. 19,158, 19,396-39 (May 3, 2019) (proposed rule) and 84 Fed. Reg. 42,044, 42,332-36 (Aug. 16, 2019) (final rule).

31.     The Secretary asserted that "as a result of hospital actions not envisioned by Congress, the rural floor is resulting in significant disparities in wage index."  *Id.* at 42,332.  The Secretary stated that Section 401 has "stretched the rural floor provision beyond a policy designed to address anomalies of some urban hospitals being paid less than the average rural hospital in their States."  *Id.* at 42,333.  The Secretary suggested that Congress's purported

failure to undertake broad wage index reform gave the Secretary the authority to act on his own: "In the absence of broader wage index reform from Congress, we believe it is appropriate to revise the rural floor calculation as part of an effort to reduce wage index disparities." *Id.* at 42,334.

32.    The Secretary claimed that the statutory provisions establishing Section 401 hospitals and the rural floor were ambiguous and allowed him to calculate the rural floor and the rural wage index using different wage data.  The Secretary stated that Section 401 "does not specify where the wage data of reclassified hospitals must be included" and that "the rural floor statute does not specify how the rural floor wage index is to be calculated or what data are to be included in the calculation."  *Id.* at 42,333.

33.    The result was two calculations: one for the rural wage index (including wage data of Section 401 hospitals that remain in the rural area for wage index purposes) and one for the rural floor (excluding that data).

34.    The Secretary restated the new policy in the FFY 2021 IPPS Final Rule (85 Fed. Reg. 58,432, 58,765 (Sept. 18, 2020)) and in the FFY 2022 IPPS Final Rule.  86 Fed. Reg. 44,774, 45,181-82 (Aug. 13, 2021).

35.    Hospitals adversely impacted by the Secretary's new policy challenged it.  The District Court for the District of Columbia held the Secretary's policy to exclude the wage data of Section 401 hospitals in calculating the rural floor was unlawful.  *Citrus HMA, LLC v. Becerra*, 587 F.Supp.3d 450 (D.D.C. 2022).  The Secretary did not appeal that decision.

36.    The *Citrus* court determined that the Secretary's use of a rural floor that was different than the rural wage index contradicted the plain language of the rural floor provision at 42 U.S.C. § 1395ww note.  *Id.* at 462 ("[T]he Court agrees that Defendant's method of separately

calculating the "rural floor" and the "rural wage index" for FY 2020 violated the unambiguous language of the "rural floor" provision of the Medicare statute."). Because the court ruled that the Secretary's policy violated the rural floor provision, it did not reach the plaintiffs' other argument that the Secretary's policy violated the statutory requirement to treat Section 401 hospitals "as rural." *Id*.

37. In the FFY 2023 IPPS Final Rule, the Secretary reverted to his policy to include Section 401 hospitals in the calculation of the rural floor. The Secretary stated the policy to apply a rural floor that is different from the wage index was inconsistent with the holding in *Citrus*. 87 Fed. Reg. 48,780, 49,003 (Aug. 10, 2022). The Secretary acknowledged that he was "finalizing a policy to include the wage data of hospitals that have reclassified from urban to rural under section 1886(d)(8)(E) of the Act (as implemented in the regulations at § 412.103) and have no additional form of reclassification (MGCRB or Lugar) in the calculation of the rural floor, and to include the wage data of such hospitals in the calculation of the wage index for the rural area." *Id.* at 49,004.

38. Therefore, for FFY 2023 and subsequent years, the Secretary has returned to the pre-FFY 2020 policy for calculating a rural floor that includes the wage data of Section 401 hospitals and that is equal to the rural wage index for the state. *Id*.

### 2. The Secretary Did Not Treat Section 401 Hospitals "As Rural" For Purposes of the Rural Reclassification Hold Harmless Requirement

39. The Medicare statute requires that if the MGCRB reclassifies a rural hospital out of the rural area, or a rural hospital is reclassified as a Lugar hospital, the wage data of reclassified hospitals must be included in calculating the rural wage index, if excluding the wage data would lower the rural wage index. 42 U.S.C. § 1395ww(d)(8)(C)(ii). As explained above, this hold harmless requirement protects rural hospitals from receiving a reduced wage index if

hospitals with higher-than-average wage data are reclassified out of the rural area.

40.    The application of the hold harmless policy as it relates to Section 401 hospitals was not an issue for many years because the Secretary adopted a policy to prohibit Section 401 hospitals from submitting a request to the MGCRB to reclassify to an urban area.

41.    Two Circuit Courts of Appeals ruled that the Secretary's policy to prevent the MGCRB from reclassifying Section 401 hospitals was unlawful. *Lawrence + Mem'l Hosp. v. Burwell*, 812 F.3d 257 (2d Cir. 2016); *Geisinger Cmty. Med. Ctr. v. Sec'y U.S. Dept. of Health & Hum. Servs.*, 794 F.3d 383 (3d Cir. 2015).

42.    The *Geisinger* court held "Congress has unambiguously expressed its intent that the Secretary shall treat Section 401 hospitals as rural" for MGCRB reclassification purposes, citing to 42 U.S.C. § 1395ww(d)(8)(E)(ii). *Geisinger*, 794 F.3d at 395. Similarly, the *Lawrence* court determined that "Congress did not grant the Secretary discretion in carrying out the provision 'the Secretary shall treat the hospital as being located in the rural area,' as it did in other parts of Section 401." *Lawrence*, 812 F.3d at 265.

43.    In response, the Secretary issued an Interim Final Rule with comment period ("IFC") agreeing that Section 401 hospitals were permitted to apply for, and receive, MGCRB reclassifications. 81 Fed. Reg. 23,428, 23,433-35 (Apr. 21, 2016). The Secretary refers to Section 401 hospitals that seek reclassification by the MGCRB as "dual reclass" hospitals. *See* 88 Fed. Reg. at 58,973.

44.    Another court case illustrates the Secretary's failure to treat Section 401 hospitals "as rural," and his acquiescence after a legal challenge to the Secretary's illegal treatment. The Secretary initially instructed the MGCRB to evaluate applications from Section 401 hospitals that applied for an MGCRB reclassification under criteria applicable to urban hospitals rather

than the more lenient criteria applicable to rural hospitals (although this policy was not stated in the regulations). The District Court for the District of Columbia invalidated that policy because it did not treat Section 401 hospitals "as rural." *See Bates Cnty. Mem'l Hosp. v. Azar*, 464 F. Supp.3d 43 (D.D.C. 2020). The *Bates* court held that, "Congress enacted a general command to treat Section 401 hospitals as rural for purposes of Subsection (d), which includes the MGCRB process." *Id.* at 51. In 2021, the Secretary issued an Interim Final Rule to implement the *Bates* decision, effective for FFY 2023 and any appeals based on this issue for FFY 2022. 86 Fed. Reg. 24,735, 24,735-39 (May 10, 2021).

45.      In the Interim Final Rule in 2016, the Secretary did not specifically address the hold harmless requirement as it applied to Section 401 dual reclass hospitals, but stated that:

> for wage index calculation and payment purposes, when there is both a § 412.103 reclassification and an MGCRB reclassification, the MGCRB reclassification would control for wage index calculation and payment purposes. Therefore, although we are amending our policy with this IFC so that a hospital can simultaneously have a reclassification under the MGCRB and an urban to rural reclassification under § 412.103, we are separately clarifying that we will exclude hospitals with § 412.103 [Section 401] reclassifications from the calculation of the reclassified rural wage index if they also have an active MGCRB reclassification to another area.

81 Fed. Reg. at 23,434; *see also* 81 Fed. Reg. 56,762, 56,924, 26 (Aug. 22, 2016).

46.      In the 2016 IFC, the Secretary did not reference the hold harmless requirement at 42 U.S.C. § 1395ww(d)(8)(C)(ii). The Secretary provided no data or analysis to support his interpretation of the hold harmless requirement as it applies to Section 401 hospitals. The Secretary also failed to explain, or even recognize, that he was changing the agency's long-standing interpretation of the hold harmless requirement, pursuant to which "the wage index value for any rural area cannot be reduced as a result of the reclassification of hospitals from that area." *See* 56 Fed. Reg. at 43,221.

47.    For periods prior to FFY 2024, the Secretary applied the hold harmless provision to rural areas by including the wage data of 1) rural hospitals that were geographically located in the rural area and were not reclassified elsewhere; 2) Section 401 hospitals that were not reclassified out of the rural area; and 3) rural hospitals that were geographically located in the rural area but were reclassified out of the rural area by the MGCRB or as Lugar hospitals if not doing so would reduce the rural wage index.  Notably, the wage data of Section 401 hospitals that were reclassified out of the rural area by the MGCRB were excluded in calculating the rural wage index no matter the impact of that exclusion on the rural wage index.  This treatment of dual reclass Section 401 hospitals was different than for the hospitals geographically located in the rural area that had a reclassification (as described under 3) in this paragraph).

48.    A comment to the FFY 2022 IPPS Proposed Rule, 86 Fed. Reg. 25,070 (May 10, 2021), requested that the Secretary "confirm that CMS recognizes its statutory obligation and that when calculating the rural wage in each state, CMS will treat hospitals that acquire rural status by way of Section 401 the same as hospitals that acquire rural status by being physically located in a rural area, including for purposes of the calculation required by 42 U.S.C. § 1395ww(d)(8)(C)(ii)." Joseph D. Glazer, *Comment on CMS-2021-0070-002*, Comment ID No. CMS-2021-0070-4928, Ctrs. for Medicare & Medicaid Servs., *available at* https://www.regulations.gov/comment/CMS-2021-0070-4928 (Jun. 26, 2021).

49.    In response to this comment, the Secretary recognized his statutory obligation to protect rural areas from the consequences of MGCRB reclassification:

> With regard to the application of the hold harmless policy that the commenter referenced at § 1886(d)(8)(C)(ii), the statute requires that a rural area be held harmless from the effects of hospitals reclassifying under Lugar or the MGCRB.

86 Fed. Reg. at 45,181.  Nonetheless, the Secretary raised numerous reasons that he believed that

applying the hold harmless requirement to dual reclassified Section 401 hospitals would be problematic. *Id.* at 45,182. The Secretary did not mention the negative impact on some hospitals of not applying the statutory hold harmless requirement with respect to dual reclass Section 401 hospitals nor the fact that the Secretary was ignoring the statutory requirements to treat Section 401 hospitals "as rural." 42 U.S.C. § 1395ww(d)(8)(E)(i).

50. In the FFY 2023 Final Rule, the Secretary again stated that the agency would continue to exclude the wage data of Section 401 hospitals when applying the hold harmless requirement. 87 Fed. Reg. at 49,003-04. Specifically, the Secretary repeated the policy announced in 2016 and stated that, "[w]hen there is both a § 412.103 reclassification and MCGRB reclassification, the MGCRB reclassification would control for wage index calculation and payment purposes." *Id*. at 49,003. The Secretary then discussed some practical implications of changing his policy, as he had done in the previous year.

51. In the FFY 2024 Final Rule, the Secretary stated that, after considering his policy of excluding Section 401 hospitals with an MGCRB reclassification in applying the hold harmless requirement, that policy was reversed for periods beginning October 1, 2023. The Secretary stated that he "took the opportunity to revisit the case law, prior public comments, and the relevant statutory language." 88 Fed. Reg. at 58,972. The Secretary stated that, "we now agree – for the reasons expressed by the U.S. Courts of Appeals for the Second and Third Circuits, as well as the U.S. District Court for the District of Columbia – that the best reading of section 1886(d)(8)(E)'s text that CMS 'shall treat the [§ 412.103] hospital as being located in the rural area' is that it instructs CMS to treat § 412.103 hospitals the same as geographically rural hospitals for the wage index calculation." *Id*.

52. The Secretary concluded that for FFY 2024, beginning October 1, 2023, the wage

data of Section 401 hospitals that are reclassified to an urban area by the MGCRB will be included in calculating the rural wage index if not doing so would reduce the rural wage index. 88 Fed. Reg. at 58,974.

53.    The Secretary's failure to consider Section 410 hospitals with a dual reclassification in applying the hold harmless requirement at 42 U.S.C. § 1395ww(d)(8)(C)(i) had the effect of lowering the rural wage index for some rural areas.  Because the rural floor is determined by the rural wage index, the rural floor was also reduced.

**F.    The Medicare Appeal Process and Expedited Judicial Review**

54.    The Social Security Act entitles a hospital to a hearing before the Provider Reimbursement Review Board if: (a) the hospital is dissatisfied with the final determination of the Secretary as to the amount of payment under the Medicare statute; (ii) the hospital files a request for Board hearing within 180 days of the final determination; and (iii) the amount in controversy is at least $10,000.  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.

55.     A group of hospitals may appeal a common dispute to the Board if the following requirements are met: (1) the hospitals are dissatisfied with the Secretary's final determination; (2) the amount in controversy is, in the aggregate, at least $50,000; and (3) the hospitals request a hearing within 180 days of the Secretary's determinations.  *Id*. § 1395oo(a), (b).

56.    Pursuant to 42 U.S.C. § 1395oo(f)(1) and the regulations at 42 C.F.R. § 405.1842(f)(1), the Board is required to grant an EJR request if the Board determines that: (i) the Board has jurisdiction to conduct a hearing on the specific matter at issue; and (ii) the Board lacks the authority to decide a specific legal question relevant to the specific matter at issue because the legal question is a challenge either to the constitutionality of a provision of a statute or to the substantive or procedural validity of a regulation or CMS Ruling.  If EJR is granted, the

hospital may seek judicial review of the final determination without a Board hearing by filing a complaint no later than sixty days after the hospital receives notice of the Board's decision to grant EJR.

57.    Pursuant to the APA, a "reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2).

## IV.    FACTS SPECIFIC TO THIS CASE

58.    Pursuant to 42 U.S.C. § 1395oo, the Plaintiffs are dissatisfied with the Secretary's calculation of their respective wage indexes and related inpatient and outpatient reimbursement for their CY 2020.  Each of the Plaintiffs timely filed an appeal with the Board under PRRB Group Case No. 24-1709GC based on the Notice of Program Reimbursement that it received for its fiscal year that ended in calendar year 2020 and satisfied all jurisdictional requirements for an appeal.

59.    The Plaintiffs' group appeal states that the Secretary's methodology for calculating the Plaintiffs' wage indexes and related reimbursement is unlawful.  The Plaintiffs alleged that the Secretary did not treat Section 401 hospitals "as rural" in calculating the Plaintiffs' wage indexes for their CY 2020 Medicare reimbursement because: (a) the Secretary excluded the wage data of Section 401 hospitals in calculating the rural floor, even though that wage data was included in calculating the rural wage index, and (b) the Secretary excluded from the wage data of Section 401 hospitals that have an MGCRB reclassification to another area from the calculation of the rural wage index, even when the exclusion of that data reduced the rural wage index and, consequently, the rural floor.  Each of the Plaintiffs received reduced

Medicare reimbursement due to either (a) or (b), or both.

60.     By letter dated January 8, 2026, the Plaintiffs requested that the PRRB grant EJR on the issue of whether the Secretary had properly calculated their wage indexes as applied to their CY 2020 Medicare reimbursement.  On February 11, 2026, the MAC raised a "substantive claim" challenge for six (6) of the Plaintiffs in the appeal, arguing that 42 C.F.R. §§ 413.24(j)(2) and 405.1873(f)(1)(ii) required each of the six Plaintiffs to include a claim or protest item on its Medicare cost report in order to receive reimbursement for the appealed issue and that the six Plaintiffs had not done so.[1]  The MAC stated that, because the six Plaintiffs had allegedly not submitted a claim or protest item, the Board or a court were precluded from ordering reimbursement for the issue appealed.  These six Plaintiffs are:

- Lutheran Hospital of Indiana, Provider No. 15-0017 FYE 6/30/2020*

- Shore Point Health Punta Gorda, Provider No. 10-0047, FYE 9/30/2020*

- Lower Keys Medical Center, Provider No. 10-0150, FYE 9/30/2020*

- Shands Lake Shore Regional Medical Center, Provider No. 10-0102, FYE 8/30/2020*

- Lafolette Medical Center, Provider No. 44-0033, FYE 9/30/2020

- Flowers Hospital, Provider No. 01-0055, FYE 9/30/2020

61.     The six Plaintiffs filed a response to the Substantive Claim Challenge on February 17, 2026, and a revised response on February 18, 2026.  The Plaintiffs filed a second EJR request dated February 23, 2026, on the issue of whether the regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 are valid and can be used to preclude Medicare payment.  That EJR request argued that 42 C.F.R. §§ 413.24(j)(2) and 405.1873 are invalid because they are contrary to the Medicare

---

[1] The MAC had filed a Substantive Claim Challenge on January 21, 2026, but revised that Substantive Claim Challenge in the February 11, 2026 submission.

statute and the holdings in *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399 (1988) and *Banner Heart Hosp. v. Burwell*, 201 F. Supp.3d 131 (D.D.C. 2016).  The EJR request also argued that, for four of the six Plaintiffs (the first four listed above, with an asterisk), a protest item was not necessary because the MAC had made an audit adjustment that impacted their wage index, demonstrating that these Plaintiffs had, in fact, made a claim on their Medicare cost reports related to their wage index in accordance with 42 C.F.R. § 413.24(j)(1)(i).

62.     By letter dated March 12, 2026, the Board granted EJR because it determined that it had jurisdiction over the appeal of the wage index issues (which it referred to as "Uncodified Regulations on Rural Floor Calculation and Wage Index Issue"), but that it lacked the authority to decide the legal questions at issue in the case and closed the group appeal.  In that decision, the Board determined that:

1) It has jurisdiction over the Uncodified Regulations on Rural Floor Calculation and Wage Index Issue for the subject year in Case No. 24-1709GC and that the Providers in the group appeal are entitled to a hearing before the Board;

2) The review process in 42 C.F.R. § 405.1873(a)-(b) has been triggered for six (6) Providers (the Challenged Providers) and the Board specifically finds that the six (6) Challenged Providers failed to include "an appropriate claim for the specific item" that is the subject of this group appeal as required under 42 C.F.R. § 413.24(j)(1);

3) Based upon the Providers' assertions regarding the FFY 2020 IPPS Final Rule, there are no findings of fact for resolution by the Board;

4) It is bound by the applicable existing Medicare law and regulation (42 C.F.R. § 405.1867); and

5) It is without the authority to decide the legal question of whether the codified Regulations on Rural Floor Calculation and Wage Index published in the FFY 2020 IPPS Final Rule is valid.

Accordingly, the Board finds that the question of the validity of the codified Regulations on Rural Floor Calculation and Wage Index published in the FFY 2020 IPPS Final Rule properly falls within the provisions of 42 U.S.C. § 1395oo(f)(1) and hereby grants the Providers' requests for EJR for the issue and

the subject year and hereby grants the Providers' requests for EJR.

63.    The March 12, 2026 decision of the Board is Exhibit 1.

64.    By letter dated March 24, 2026, the Board reopened the group appeal to respond to the second EJR petition addressing the validity of 42 C.F.R. §§ 413.24(j) and 405.  The Board determined that it had jurisdiction over the issues raised in the substantive claim challenge, but that "[i]t is without the authority to decide the legal question of whether 42 C.F.R. § 413.24(j) and 42 C.F.R. § 405.1873 are contrary to 42 U.S.C. § 1395oo, *Bethesda*, and *Banner Heart Hospital*."  In that decision, the Board determined that:

1)  It has jurisdiction over the validity of 42 C.F.R. § 413.24(j) and 42 C.F.R. § 405.1873 as it relates to the Challenged Providers for the subject year in Case 24-1709GC and that the Providers in the group appeal are entitled to a hearing before the Board;

2)  Based upon the Providers' assertions regarding the validity of 42 C.F.R. § 413.24(j) and 42 C.F.R. § 405.1873, there are no findings of fact for resolution by the Board;

3)  It is bound by the applicable existing Medicare law and regulation (42 C.F.R. § 405.1867); and

4)  It is without the authority to decide the legal question of whether 42 C.F.R. § 413.24(j) and 42 C.F.R. § 405.1873 are contrary to 42 U.S.C. § 1395oo, *Bethesda*, and *Banner Heart Hospital*.

Accordingly, the Board finds that the question of whether 42 C.F.R. § 413.24(j) and 42 C.F.R. § 405.1873 are contrary to 42 U.S.C. § 1395oo, *Bethesda*, and *Banner Heart Hospital* properly falls within the provisions of 42 U.S.C. § 1395oo(f)(1) and hereby grants the Challenged Providers' request for EJR for the issue and the subject year.

65.    The March 24, 2026 decision of the Board is Exhibit 2.

66.    This action is being filed within 60 days of the date on which the Plaintiffs received notification of the Board's March 12, 2026 EJR decision.

67.    The Secretary's wage index regulatory scheme is unlawful; he has exceeded his

statutory authority; and he has acted arbitrarily, capriciously, and abused his discretion in calculating the Plaintiffs' CY 2020 wage indexes and related reimbursement, resulting in the Plaintiffs' wage index adjustments and related reimbursement being less than required by law. Accordingly, the Plaintiffs bring this suit to have this Court order the Secretary to lawfully and properly calculate the Plaintiffs' respective CY 2020 wage index adjustments and Medicare reimbursement.

## COUNT ONE
### Violation of the Medicare Statute – Wage Index

68.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

69.    The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . not in accordance with law [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2)(A) and (C).

70.    The Secretary is required to treat Section 401 hospitals "as rural" in calculating the rural floor.  42 U.S.C. §§ 1395ww(d)(8)(E) (requiring that Section 401 hospitals be treated "as rural"), 1395ww note (requiring a rural floor based on rural wage data).  For FFY 2020 through FFY 2023, the Secretary did not include the wage data of Section 401 hospitals in calculating the rural floor.  The rural wage index and rural floor were different because the wage data for Section 401 hospitals were included in the rural wage index but not the rural floor.  In the FFY 2023 IPPS Final Rule, the Secretary stated that for FFY 2023 and after, the rural floor would be determined under the pre-FFY 2020 methodology, in which the rural floor and the rural wage index are calculated using the same wage data, including the wage data of Section 401 hospitals.  The Secretary refuses to apply this methodology to the time period at issue in this

case.

71.     The Secretary is required to treat dual reclass Section 401 hospitals "as rural" when applying the hold harmless requirement.  42 U.S.C. §§ 1395ww(d)(8)(E) (requiring that Section 401 hospitals be treated "as rural"), 1395ww(d)(8)(C)(ii) (requiring that the rural wage index not be reduced as the result of rural hospitals being reclassified out of the area).  For periods prior to FFY 2024, the Secretary excluded the wage data of Section 401 hospitals that had been reclassified by the MGCRB out of the rural area even when the exclusion had the effect of lowering the rural wage index and, consequently, the rural floor.  Effective with the FFY 2024 IPPS Final Rule, the Secretary began including the wage data of Section 401 hospitals that had been reclassified out the rural area if not doing so would lower the rural wage index.  The Secretary has refused to apply this methodology to the time period at issue in this case.

72.     Because the Secretary used unlawful methodologies to calculate the Plaintiffs' CY 2020 wage indexes, each Plaintiffs' Medicare reimbursement for CY 2020 is substantially less than required by law.

**COUNT TWO**
**<u>Violation of the Medicare Statute and Administrative Procedure Act -</u>**
**<u>Arbitrary and Capricious Action and Failure to Follow</u>**
**<u>Notice and Comment Requirements</u>**

73.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

74.     Under the APA, a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions that are arbitrary, capricious, or an abuse of discretion.  5 U.S.C. § 706(2)(A).  The Secretary's methodology for calculating the Plaintiffs' CY 2020 wage indexes and related reimbursement is arbitrary, capricious, and an abuse of discretion.  The APA also requires the Secretary to use notice and comment rulemaking to implement substantive

rules.  5 U.S.C. § 553.

75.     The Medicare Act at 42 U.S.C. § 1395hh(a)(2) requires the Secretary to follow a proper notice and comment process when establishing or changing a substantive legal requirement governing payment for services under the Medicare program.  The Secretary did not follow a proper notice and comment process to adopt his policy of excluding Section 401 hospitals from the calculation of the rural floor and from the application of the hold harmless requirement.

76.     For FFY 2020 through FFY 2023, the Secretary excluded the wage data of Section 401 hospitals from the calculation of the rural floor.  When adopting this change, the Secretary wholly failed to provide a reasonable justification for the change.  Nor did the Secretary properly promulgate his policy, in contravention of 42 U.S.C. § 1395hh(a)(2) and 5 U.S.C. § 553.  Thus, the Secretary's policy is arbitrary, capricious, and an abuse of discretion.

77.     Prior to FFY 2024, for purposes of the hold harmless requirements under the Medicare state, the Secretary excluded from the calculation of the rural wage index the wage data of Section 401 hospitals that have an active MGCRB or Lugar reclassification to another area, even when the exclusion of that data reduced the rural wage index and the rural floor.  The Secretary wholly failed to provide a reasonable justification for this policy.  Nor did the Secretary properly promulgate his policy, in contravention of 42 U.S.C. § 1395hh(a)(2) and 5 U.S.C. § 553.  Thus, the Secretary's policy is arbitrary, capricious, and an abuse of discretion.

78.     Because the Secretary used a methodology when calculating the Plaintiffs' wage indexes that was arbitrary, capricious, and an abuse of discretion, and failed to follow notice-and-comment rulemaking, each Plaintiffs' Medicare reimbursement for FFY 2020 is substantially less than it is required to be.

**COUNT THREE**
**Violation of the Medicare Statute – Board Authority**

79.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth below.

80.     The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . not in accordance with law [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  5 U.S.C. § 706(2).

81.     Section 405.1873 of 42 C.F.R., which incorporates 42 C.F.R. § 413.24(j), precludes the Board from determining the amount of total reimbursement due a provider because, if a provider does not claim the cost or file a protest item, "the specific item is not reimbursable, regardless of whether the Board further determines in such final hearing decision that the other substantive reimbursement requirements for the specific item are or are not satisfied."  42 C.F.R. § 405.1873(f)(1)(ii).

82.     The Secretary's regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 are contrary to the Medicare statute because the regulations impermissibly constrain the authority granted by 42 U.S.C. § 1395oo(a)(1)(A)(i) to the Board to decide a provider's dissatisfaction with "the amount of total program reimbursement due the provider."  42 U.S.C. § 1395oo(a)(1)(A)(i).  The statute does not require that a provider include a claim or a protested amount for a specific cost on its cost report before payment related to that cost can be addressed by the Board.

**COUNT FOUR**
**Arbitrary and Capricious Agency Action – Board Authority**

83.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth below.

84.     The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary [and] capricious [or] an abuse of discretion."  5 U.S.C. § 706(2).

85.     The regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 are arbitrary and capricious and an abuse of discretion and are, therefore, invalid.  5 U.S.C. § 706(2).  Congress granted to the Board the authority to decide issues brought to it by providers related to "the amount of the total program reimbursement due the provider."  42 U.S.C. § 1395oo(a)(1)(A)(i). The Secretary's regulations prevent the Board from deciding the amount of total program reimbursement due the provider.  When promulgating the regulation at 42 C.F.R. §§ 413.24(j) and 405.1873 the Secretary wholly failed to justify this break from the statute.  *See Burlington N. and Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776–77 (D.C. Cir. 2005).  The Secretary did not even acknowledge that its regulation would have such an effect.  80 Fed. Reg. 70,298, 70,551-65, 70,603-04 (Nov. 13, 2015).  Because the Secretary relied on factors that Congress has not intended him to consider and "entirely failed to consider an important aspect of the problem," the regulations are "arbitrary and capricious," as well as an abuse of discretion, and must be set aside under the APA.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request relief as follows:

1.     A declaration by the Court that the Secretary's policy to exclude the wage data of Section 401 hospitals from the calculation of the rural floor is arbitrary, capricious, an abuse of discretion, and contrary to statutory law, and is, therefore, invalid.

2.     A declaration by the Court that the Secretary's policy to exclude the wage data of

Section 401 hospitals from the calculation of the rural floor is contrary to provisions of the Medicare statute at 42 U.S.C. § 1395ww note and 42 U.S.C. § 1395ww(d)(8)(E)(i).

3.    A declaration by the Court that the Secretary's policy to exclude the wage data of Section 401 hospitals with an MGCRB reclassification to another area from the calculation of the rural wage index, even when doing so lowered the rural wage index (and consequently, the rural floor), is contrary to provisions of the Medicare statute at 42 U.S.C. § 1395ww(d)(8)(C)(ii) and 42 U.S.C. § 1395ww(d)(8)(E)(i).

4.    A declaration by the Court that the Secretary's policy to exclude Section 401 hospitals with a MGCRB or Lugar reclassification to another area from the calculation of the rural wage index, even when doing so lowered the rural wage index (and consequently, the rural floor) is arbitrary, capricious, an abuse of discretion, and contrary to statutory law, and is, therefore, invalid.

5.    A declaration by the Court that the Secretary's regulations at 42 C.F.R. §§ 413.24(j) and 405.1873, that deny the Board's authority to decide appeals related to issues not protested or claimed by providers, is arbitrary, capricious, an abuse of discretion, and contrary to statutory law, and is therefore invalid.

6.    A declaration by the Court that 42 U.S.C. § 1395oo(a)(1)(A)(i) forbids the Secretary from precluding reimbursement for appeals related to the total program reimbursement due providers.

7.    An order from this Court requiring the Secretary to recalculate Plaintiffs' wage index and corresponding Medicare inpatient and outpatient payments for their CYs 2020 consistent with the Medicare statute at 42 U.S.C. § 1395ww(d)(8)(E)(i) and 42 U.S.C. § 1395ww note.

8.      An order from this Court requiring the Secretary to pay Plaintiffs interest on the payments resulting from the Court's orders, pursuant to 42 U.S.C. § 1395oo(f)(2).

9.      An order from this Court awarding Plaintiffs the costs and fees incurred in this litigation and granting such other relief in law and/or equity as this Court may deem just and proper.

Respectfully submitted,

/s/ Barbara Straub Williams
Barbara Straub Williams
D.C. Bar No. 396582
POWERS PYLES SUTTER & VERVILLE, PC
1250 Connecticut Ave NW, 8th Floor
Washington, DC 20036
Tel. (202) 872-6733
Fax (202) 785-1756
Barbara.Williams@PowersLaw.com

Attorney for Plaintiffs

Dated:  May 8, 2026

4900-9901-6345, v. 13